481 So.2d 1086 (1986)
Dale J. LEININGER
v.
MERCHANTS & FARMERS BANK, MACON, MS & Charles G. Perkins & W.L. Stokes.
No. 55997.
Supreme Court of Mississippi.
January 29, 1986.
*1087 Jim Fraiser, Jackson, for appellant.
Richard M. Edmonson, Robert L. Spell, Robert A. Biggs, III, Edmonson, Biggs & Jelliffe, Jackson, Merriman M. Watkins, Crystal Springs, James E. Lever, Hazlehurst, for appellees.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
A constitutional challenge to Miss. Code Ann. § 89-1-55 (1972), the Mississippi power of sale foreclosure statute, gives rise to this appeal from the Chancery Court of Copiah County. Appellant Dale J. Leininger perfects this appeal and assigns the following error:
The ruling of the court deprived the appellant of his right to own property by upholding the Mississippi foreclosure notice requirements on a deed of trust, which are in violation of appellant's rights to due process of law.

I.

FACTS
On December 7, 1981, Dale J. Leininger executed a deed of trust to the Merchants & Farmers Bank of Macon, MS, to secure a note of $73,392.57. The principal and interest on the note were due December 7, 1982. The note contained language saying, "Any notice of sale or other intended disposition of the Collateral by Bank sent to maker at the address specified above, or such other address of Maker as may be shown on Bank's records, at least five days prior to such action shall constitute reasonable notice to Maker." The deed of trust contained a power of sale provision upon publication of a notice in a newspaper for three consecutive weeks and the posting of the notice at the county courthouse.
When the note became due in December of 1982, Mr. Leininger was unable to make any payment. The bank, in February of 1983, allowed Mr. Leininger a sixty day extension, but the debt continued to go unpaid. The bank again offered Mr. Leininger more time to pay the debt, but no specific time was agreed upon.
On June 9, 1983, Mr. Leininger moved to England to close a business transaction. He did not inform the bank of his address there, nor did he inform them of when he would return. During the absence of Mr. Leininger, the bank turned the matter over to Charles G. Perkins, the trustee named in the deed of trust. Mr. Perkins did not attempt to contact Mr. Leininger, but he contacted John T. Armstrong, Jr., an attorney Mr. Perkins thought to be representing Mr. Leininger in the matter.
Although Mr. Leininger in the trial of this case denied being represented by Mr. Armstrong, Mr. Armstrong claimed to have spoken with Mr. Leininger numerous times concerning this matter. During the ensuing months Mr. Armstrong had a continuing dialogue with the bank, trying to prevent foreclosure. He also, on several occasions, discussed the impending foreclosure with Mr. Leininger.
In November of 1983, Charles Perkins commenced foreclosure proceedings. He caused publication to be had in the Copiah Courier for three consecutive weeks in accordance with Miss. Code Ann. § 89-1-55 (1972), as well as posting a notice at the *1088 Copiah County Courthouse bulletin board. At no time did Mr. Perkins or anyone else associated with the bank, attempt to serve actual notice on Mr. Leininger. However, two days before the sale, Mr. Leininger, still in England, received actual notice of the date of the sale from his aunt, who read about the sale in the newspaper.
The foreclosure sale was conducted December 16, 1983. That morning Mr. Armstrong, acting in the best interest of Mr. Leininger, encouraged Mr. Perkins to attempt to sell the land in parcels. Mr. Armstrong also searched the courthouse for potential buyers, but there were none. The property was sold to the Merchants and Farmers Bank for $74,300.
Subsequently, Mr. Leininger returned from England and petitioned in Chancery Court to have the foreclosure sale set aside on the ground he had been denied due process of law. The chancellor upheld the foreclosure sale finding that Mr. Leininger had failed to meet his burden of proof. In addition, the chancellor commented, "[T]o hold that a person who goes abroad and is unable to be reached can prevent a foreclosure, would work hardships against banks and lending institutions that would be unbearable."

II.

LAW
The contentions made by the appellant in his brief pose two issues:
(A) Whether the use of the power of sale foreclosure by a bank constitutes state action giving rise to protection under the 5th and 14th Amendments to the United States Constitution.
(B) Whether the Mississippi Power of Sale Foreclosure procedure is violative of due process.

A.
Did the bank's use of the power of sale foreclosure constitute state action?
The Fourteenth Amendment provides in part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law... ." The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1946).
The threshhold question in the instant case is whether the use of the power of sale foreclosure by the trustee of appellant's deed of trust constituted "state action" so as to invoke Fourteenth Amendment protection.
Arguing that there was "state action" appellant advances the "encouragement" theory. That is, appellant argues that Miss. Code Ann. § 89-1-55 (1972) "encourages lenders to follow a notification process which is in violation of due process and that therefore, there is prohibited state involvement in the manner in which mortgages are foreclosed ... pursuant to deeds of trust."
Appellant relies primarily on Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), in which the U.S. Supreme Court held, "Prohibited state involvement can be found even where the state can be charged with only encouraging rather than commanding discrimination." 387 U.S. at 375, 87 S.Ct. at 1631.
Appellant also relies on Garner v. Tri-State Development Co., 382 F. Supp. 377 (E.D.Mich.S.D. 1974), and Turner v. Blackburn, 389 F. Supp. 1250 (W.D.N.C. 1975). In Garner the Court examined the Michigan foreclosure by advertisement statute and held, "This statute does encourage private parties to foreclose by advertisement." 382 F. Supp. at 379. Citing Reitman, the Court concluded there was sufficient state involvement in the foreclosure procedure to invoke Fourteenth Amendment protection.
In Turner the Court examined the North Carolina statutory mortgage foreclosure procedure in which both the clerk of the court and the sheriff played a direct role. The Turner Court held, "[T]he direct participation *1089 by the clerk in the procedure by which plaintiff was deprived of ownership, and threatened to be deprived of possession of her property constituted state action." 389 F. Supp. at 1258.
Notwithstanding Garner and Turner, the large majority of both Federal and State jurisdictions to face the issue under analysis have concluded that statutory sale foreclosure procedures do not constitute "state action." The majority of jurisdictions view the power of sale foreclosure as a contractual power based in the deed of trust itself. The majority generally holds that the statutes dealing with nonjudicial foreclosure do not give rise to the power of sale foreclosure, but simply regulate the procedure by which that contractual remedy is carried out.
For instance, the Eighth Circuit Court of Appeals recently held in Warren v. Government National Mortgage Assoc., 611 F.2d 1229 (8th Cir.1980), cert. denied, 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980):
[W]e emphasize that the power of sale clause as contained in the deed of trust is a contractual power having its genesis in the deed of trust itself and as such exists independent of any statute otherwise governing it. [Citations omitted]. As a party to the contract, and even though it was a governmentally-owned and authorized entity, GNMA had a right to resort to its contractual remedies just as a purely private entity had. [Citations omitted].
We therefore are of the general opinion that mortgage foreclosures through power of sale agreements such as the one at issue here are not in and of themselves powers of a governmental nature. [Citations omitted].
In a similar case the Fifth Circuit Court of Appeals held:
Article 3810 [Texas Sale Foreclosure Statute] does not authorize the power of sale. Nor does it even codify the right to contract for and to exercise that power. Certainly it does not compel it. Its purpose and effect is to restrict the manner in which private parties, if they have bargained for the remedy, may exercise it. Article 3810 does not aid, support, or encourage foreclosures under powers of sale. It regulates exercise of those powers.
Barrera v. Security Building & Investment Corp., 519 F.2d 1166 (5th Cir.1975).
Other federal cases with similar holdings include Charmicor v. Deaner, 572 F.2d 694 (9th Cir.1978); Roberts v. Cameron-Brown Co., 556 F.2d 356 (5th Cir.1977); Parks v. "Mr. Ford," 556 F.2d 132 (3rd Cir.1977); Northrip v. Federal National Mortgage Assn., 527 F.2d 23 (6th Cir.1975); and Bryant v. Jefferson Federal Savings & Loan Assoc., 509 F.2d 511 (D.C. Cir.1974).
Likewise, the majority of state courts to address the issue under analysis have rejected the claim that power of sale foreclosure procedures involve "state action." The Supreme Court of Michigan recently held that a mortgagee who exercises a foreclosure option is relying on a contract remedy, not on a right created by statute and therefore the state cannot be said to be significantly involved through "encouragement" in the challenged conduct. Cramer v. Metropolitan Savings & Loan Assoc., 401 Mich. 252, 258 N.W.2d 20 (1977), cert. denied, 436 U.S. 958, 98 S.Ct. 3072, 57 L.Ed.2d 1123 (1978).
Other state court decisions reaching similar conclusions include Garfinkle v. Superior Court of Contra Costa County, 21 Cal.3d 268, 146 Cal. Rptr. 208, 578 P.2d 925 (1978); Macon-Atlanta State Bank v. Gall, 666 S.W.2d 934 (Mo. Ct. App. 1984); Dennison v. Jack, 304 S.E.2d 300 (W. Va. 1983); Kennebec, Inc. v. Bank of the West, 88 Wash.2d 718, 565 P.2d 812 (1977); Coffey Enterprises Realty & Development Co., Inc. v. Holmes, 233 Ga. 937, 213 S.E.2d 882 (1975); Armenta v. Nussbaum, 519 S.W.2d 673 (Tex. 1975).
In the present case the appellant argues, "[T]he state of Mississippi should align itself with the minority of jurisdictions because these jurisdictions apply a more equitable *1090 and just standard to the relationship between mortgagor and mortgagee."
This Court elects to follow the majority view that nonjudicial foreclosures of deeds of trust constitute private action authorized by contract and do not come within the scope of the due process clause of the federal constitution. "Nonjudicial foreclosure statutes do not authorize or compel inclusion of a power of sale in a deed of trust or provide for such a power of sale when one has not been included by the parties." Garfinkle, 578 P.2d at 932. As Judge Wisdom wrote in Barrera,
Virtually all formal private arrangements assume, at some time, the supportive role of the state. To hold that the state, by recognizing the legal effect of those arrangements, converts them into state acts for constitutional purposes would effectively erase to a significant extent the constitutional line between private and state action and subject to judicial scrutiny under the Fourteenth Amendment virtually all private arrangements that purport to have binding legal effect.
Barrera, 519 F.2d at 1170.
The trial court was correct in ruling that there was no "state action" involved.

B.
Having reached the answer to the threshold question of whether the procedure employed by the trustee of the deed of trust involved sufficient "state action" as to invoke the Fourteenth Amendment to the United States Constitution in the negative, this Court need not address the second issue.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.
ANDERSON, J., not participating.