# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00879-COA

**TONY L. PAGADOR**                                                         **APPELLANT**

**v.**

**TRUSTMARK NATIONAL BANK**                                      **APPELLEE**

DATE OF JUDGMENT:                  05/17/2016
TRIAL JUDGE:                             HON. ROGER T. CLARK
COURT FROM WHICH APPEALED:    HARRISON COUNTY CIRCUIT COURT,
                                                FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:       TIMOTHY BROWN
                                                WILLIAM JOSEPH KERLEY
ATTORNEYS FOR APPELLEE:         WILLIAM "TREY" JONES III
                                                WILLIAM DEMENT DRINKWATER
                                                TAYLOR BRANTLEY MCNEEL
NATURE OF THE CASE:                CIVIL - REAL PROPERTY
DISPOSITION:                           AFFIRMED - 08/29/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**LEE, C.J., FOR THE COURT:**

¶1.     Tony Pagador appeals the judgment of the Harrison County Circuit Court granting

Trustmark National Bank's motion for summary judgment arising from the foreclosure of

Pagador's home.  Following a de novo review, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2006, Pagador purchased a home at 13429 Libby Lane in Gulfport, Mississippi.

To purchase the home, Pagador entered into a deed of trust with T. Graham Mortgage Inc.,

which was secured with a promissory note.  The deed of trust contained a "[r]ider" and

incorporated an addendum from the Department of Veteran Affairs (VA) guaranteeing the loan, as Pagador was a veteran with the United States Coast Guard. T. Graham Mortgage assigned the deed of trust to Trustmark National Bank.

¶3. Pagador made timely mortgage payments on the loan up until June 2010, when he learned that the house contained toxic Chinese drywall. Pagador and his family then moved out of the home so that remedial work could be performed on the house. He asked Trustmark for a forbearance from monthly loan payments for the period of time he and his family were not living in the home while repairs were being made. Trustmark offered Pagador a special VA forbearance and informed him by letter, which he signed and returned, that his loan was in forbearance from July 1, 2010, through December 31, 2010. The letter further specified that after December 31, 2010, Pagador would "be required to pay the total amount past due for the period of time in which no payments were made . . . ."

¶4. In May 2011, Pagador requested an additional forbearance period because the drywall repair was still not complete. Trustmark issued a second forbearance period, which the parties agree ended August 31, 2011. In September 2011, Pagador requested a third forbearance period because the drywall remediation was still not complete. In an email to Trustmark dated February 13, 2012, Karla Pagador, Pagador's mother, alleged that James Hodges, a VA representative, had verbally advised Pagador that Trustmark had extended the forbearance until March 7, 2012. However, there was no communication, documentation, or other evidence indicating Trustmark had granted a third or extended forbearance. Rather, Pagador was notified by substitute trustee, Gerald Warren, via certified mail dated February

2

10, 2012, that Trustmark was foreclosing on the home.

¶5.    Specifically, the notice letter stated that "Trustmark National Bank [had] previously notified [Pagador] by certified mail that the above referenced loan [was] in default and declared all of the indebtedness secured by [the deed of trust] . . . to be due and owing." The notice advised that Warren had been instructed to initiate foreclosure proceedings and stated that the foreclosure was scheduled for March 22, 2012. The notice further provided that "[i]n order to cure the default and reinstate the loan, the amount of $21,585.75 is due . . . ." Finally, the notice advised that the loan must be reinstated or paid in full prior to the day of sale, and if not reinstated or paid in full, then the foreclosure sale would proceed as indicated.

¶6.    It is undisputed that Pagador made no mortgage payments after June 2010. Pagador did not cure the default, and neither did he object to the foreclosure. On March 22, 2012, Trustmark foreclosed on Pagador's home. Pagador now appeals.

**STANDARD OF REVIEW**

¶7.    This Court employs a de novo standard when reviewing a circuit court's grant of summary judgment. *Blanchard v. Mize*, 186 So. 3d 403, 405 (¶11) (Miss. Ct. App. 2016) (citing *In re Admin. of Estate of May*, 32 So. 3d 1227, 1229 (¶5) (Miss. Ct. App. 2010)). Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (quoting M.R.C.P 56(c)). We must examine all of the evidence before the trial court in the light most favorable to the nonmoving party. *Id*. "The party

3

opposing the motion may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial." *Id*. (quoting *Estate of May*, 32 So. 3d at 1229 (¶5) (quoting M.R.C.P. 56(e))). "Bare assertions are not enough to avoid summary judgment . . . ." *Lott v. Purvis*, 2 So. 3d 789, 792 (¶11) (Miss. Ct. App. 2009) (internal quotations and citations omitted).

## DISCUSSION

¶8.     Pagador argues that the circuit court erred in granting Trustmark's motion for summary judgment.  Specifically, Pagador asserts there is a genuine issue of material fact regarding (1) whether Pagador was in default at the time Trustmark foreclosed on his home and (2) whether Trustmark breached the contract by failing to follow the conditions precedent specified in the deed of trust and the VA regulations and guidelines prior to foreclosing on Pagador's home.

### I.     Default

¶9.     Pagador claims he was not in default at the time Trustmark foreclosed because he was in a special VA forbearance.  However, Trustmark met its burden of showing an absence of a genuine issue of material fact with respect to this claim.  The record shows and the parties agree that Pagador was granted two forbearance periods: one from July 1, 2010, through December 31, 2010, and a second from May 2011 through August 31, 2011.  Pagador now claims in his brief on appeal that the forbearance "was extended up until on or about March 7, 2012," and again that "his special VA forbearance period was repeatedly extended all the

4

way up to the March 22, 2012 foreclosure sale." But, apart from his bare assertions, Pagador provided no evidentiary support for this claim.

¶10. The Mississippi Supreme Court has held that "other than undenied allegations in the party's pleadings and [Mississippi Rule of Civil Procedure] 36 admissions, all material submitted in opposition to summary judgment must be sworn." *Handy v. Madison Cty. Nursing Home*, 192 So. 3d 1005, 1010 (¶16) (Miss. 2016). As such, the email in which Pagador's mother, a nonparty, asserts that Hodges, also a nonparty, purportedly told Pagador that a third forbearance had been approved is improper summary-judgment evidence. Pagador failed to produce any documentation, affidavits, or otherwise proper summary-judgment evidence to support his claim that he was still in forbearance. In fact, neither Pagador's complaint nor his affidavit claims that a third or extended forbearance was ever granted.

¶11. Under the terms of the promissory note, Pagador was in default when he failed "to pay the full amount of each monthly payment on the date it [was] due." The facts clearly show that Pagador's last mortgage payment was made in June 2010 and that his final forbearance period ended August 31, 2011. As such, it is clear there is no genuine issue regarding whether Pagador was in default at the time of the foreclosure on March 22, 2012. This issue is without merit.

## II. Breach of Contract

¶12. Pagador also asserts that Trustmark breached the parties' contract by failing to comply with VA regulations and guidelines by extending the time period for foreclosure and by

failing to provide him with proper notice of acceleration prior to foreclosure.

### A. VA Regulations and Guidelines

¶13. Pagador argues that Trustmark was required to comply with VA regulations and guidelines, to specifically extend the time period for foreclosure. However, in his appellate brief, Pagador admits that nothing in Mississippi law has addressed VA regulations and guidelines being incorporated into a mortgage. Furthermore, there is nothing in the deed of trust, VA rider, VA regulations, VA servicing guidelines, or otherwise that would require Trustmark to grant an additional forbearance, extend the time prior to the foreclosure, or refrain from foreclosure. In response to Trustmark's motion for summary judgment, Pagador does not cite to any specific VA regulations or guidelines that would require an additional forbearance period or prohibit the lender from foreclosure. Rather, Pagador references generally the VA guidelines' stated purpose of limiting foreclosures on VA guaranteed loans through various loss-mitigation options, including repayment plans, loan modifications, special forbearance, compromise sale, or deed in lieu of foreclosure.

¶14. Indeed, Trustmark participated in such loss-mitigation options by extending Pagador two forbearance periods. There was nothing in the deed of trust or other incorporated documents that imposed a duty on Trustmark to grant an additional forbearance period or otherwise refrain from foreclosure. Accordingly, there is no genuine issue of material fact with respect to whether Trustmark breached the contract by failing to comply with VA guidelines and regulations.

### B. Notice of Acceleration

¶15.    Pagador also argues that Trustmark was required under the deed of trust to "give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . ."  However, the mortgage addendum for the VA guaranteed loan specifically stated, "The Borrower agrees that the Lender or its assignee may *at any time without prior notice accelerate all payments* under the Deed to Secure Debt and Note *and exercise any other remedy allowed by law, including foreclosure*, for breach of the Deed to Secure Debt or Note . . . ." (Emphasis added).  Furthermore, the addendum provided that "[i]n the event of any conflict between the provisions of this Rider and the provisions of the Deed to Secure Debt or Note, the provisions of this Rider shall control."  As such, the addendum controls, and Trustmark was not required to give notice prior to acceleration of the debt.  This issue is without merit.

### III.    Pagador's Remaining Claims

¶16.    Pagador also asserts various other arguments, including misrepresentation, fraud, promissory estoppel, negligence, wrongful foreclosure, negligent infliction of emotional distress, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.  None of the facts in the record, when viewed in light most favorable to Pagador, support these claims.  Under the terms of the deed of trust, promissory note, and VA rider, Trustmark was well within its rights to foreclose.  After granting Pagador two separate forbearance periods, Trustmark notified him of the foreclosure proceedings.  Pagador failed to object to the foreclosure, and the foreclosure took place as set forth.  When a property owner fails to object to the foreclosure before the sale, he has waived any ground

7

to challenge the foreclosure. *Robinson v. Trustmark Nat'l Bank*, 179 So. 3d 1146, 1150 (¶19) (Miss. Ct. App. 2015). Thus, in addition to the fact that these claims lack merit, Pagador has waived the right to raise them on appeal.

¶17. The concurring opinion interprets *Robinson* as holding that if a debtor does not object before, during, or immediately after the foreclosure sale, he has "waived only his right to have the sale set aside . . . ." In doing so, the concurring opinion states that "Pagador's failure to object . . . waived only his right to have the sale set aside, not a claim for damages." However, *Robinson* states that a failure to raise objections before the sale "waived any ground to *challenge the foreclosure*." *Robinson*, 179 So. 3d at 1150 (¶19). The concurring opinion mistakes "challenge the foreclosure" as synonymous with "have the sale set aside." Thus, the concurring opinion confuses the right available to the injured mortgagor—to challenge the sale through a wrongful-foreclosure action—with the remedies available to the injured mortgagor—"(1) having the sale set aside and (2) recovering from the mortgagee the damages suffered as a result of the wrongful foreclosure." *Nat'l Mortg.Co. v. Williams*, 357 So. 2d 934, 936 (Miss. 1978). In the instant case, Pagador seeks the remedy of damages—however, his cause of action remains one for wrongful foreclosure. Our body of caselaw on wrongful foreclosures is not rendered inapplicable in the instant case simply because, here, the mortgagor seeks the remedy of damages. Accordingly, Pagador's failure to object to the sale waived any grounds to challenge the foreclosure.

¶18. **AFFIRMED.**

> **GRIFFIS, P.J., CARLTON AND WESTBROOKS, JJ., CONCUR. IRVING, P.J., AND ISHEE, J., CONCUR IN PART AND IN THE RESULT WITHOUT**

8

**SEPARATE WRITTEN OPINION. BARNES, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY ISHEE, J. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. FAIR AND GREENLEE, JJ., NOT PARTICIPATING.**

**BARNES, J., SPECIALLY CONCURRING:**

¶19. While I concur with the majority's affirming the circuit court's grant of summary judgment to Trustmark, I disagree with the determination that Pagador waived his claims by failing to object to the foreclosure sale.

¶20. To support its finding of waiver, the circuit court cited *Jackson v. Bank of America*, No. 3:13CV581-LG-JCG, 2014 WL 5511017, at *5 (S.D. Miss. Oct. 31, 2014), which held that when a mortgagor has actual notice of a foreclosure sale and fails to object, he is "estopped from subsequently challenging the title of the purchaser." However, what the circuit court failed to consider is the district court's holding that the plaintiff's claims for negligence, unjust enrichment, and fraudulent conveyance should be dismissed "because each of these claims *seeks to have the sale voided or set aside for irregularities in the foreclosure sale*." *Id*. at *6 (emphasis added). Similarly, the majority cites *Robinson v. Trustmark National Bank*, 179 So. 3d 1146, 1150 (¶16) (Miss. Ct. App. 2015), where this Court held that because the appellant failed to raise her issues before the sale, she waived "any ground to challenge the foreclosure." In that case, we noted our "consistent" holding that if a debtor does not object before, during, or immediately after the foreclosure sale, "he waives his grounds *for challenging the sale*." *Id*. (emphasis added); *see also Nichols v. Bush*, 913 So. 2d 387, 391 (¶22) (Miss. Ct. App. 2005) (finding a plaintiff's "silence" during the foreclosure sale "waived any irregularity in the sale and . . . estopped [him] from seeking to

9

have the foreclosure set aside").[1] Were Pagador seeking to set aside the foreclosure sale, I would agree with the circuit court and the majority that he had waived his claims.[2]

¶21. But as Pagador asserts, he does not "seek to have the sale voided or set aside for irregularities in the foreclosure sale"; he seeks monetary damages. Therefore, *Jackson* and *Robinson* are inapplicable to this case, as neither stands for the proposition that there is absolutely *no* relief available to a plaintiff after foreclosure if he fails to object to the proceedings. These cases simply hold that if a plaintiff makes no objection to the foreclosure, he may not challenge or set aside the sale.

¶22. I have found no precedent that a plaintiff waives any and all rights to bring an action for damages for wrongful foreclosure if he fails to object to the sale. In *National Mortgage Company v. Williams*, 357 So. 2d 934, 936 (Miss. 1978), the Mississippi Supreme Court stated:

> In general, the authorities support the rule that an action at law by the mortgagor against the mortgagee will lie to recover damages for a wrongful

---

[1] This holding is grounded on the doctrine of equitable estoppel:

[O]ne of the established rules of the doctrine is that, if a person knowingly suffers another to expend money on land under an erroneous opinion of title, although he does it passively by looking on without making known his claim, he shall not afterwards be permitted to enforce his legal right against such other.

*Nichols*, 913 So. 2d at 391 (¶20) (quoting *Kelso v. Robinson*, 172 Miss. 828, 840-41, 161 So. 135, 137 (1935)).

[2] The *Robinson* court found the former property owner "had a duty to speak, and her silence as to the legitimacy of the foreclosure and the documents supporting the sale effectively estopped her from *challenging the title of the subsequent purchaser*." *Robinson*, 179 So. 3d at 1149 (¶15) (emphasis added).

foreclosure that is, a foreclosure without right, which would ordinarily be ineffective and invalid irrespective of the manner in which it is executed. Generally, in such circumstances, the mortgagor has the right to elect between (1) having the sale set aside and (2) recovering from the mortgagee the damages suffered as a result of the wrongful foreclosure.

Actions at law for damages for premature foreclosures have been sustained, particularly where a required demand of payment was not made to accelerate maturity, although there is authority to the effect that a right to maintain such an action may be lost by electing to proceed in equity for the return of the equity of redemption and obtaining a decree ordering restoration of the property.

(Quoting 55 Am. Jur. *Mortgages* § 535, 516-17 (1971)). Thus, our supreme court has distinguished between the two types of relief requested in an action for wrongful foreclosure. *See also C&K Invs. v. Fiesta Grp. Inc*., 248 S.W.3d 234, 254 (Tex. App. 2007) (The failure to foreclose on property properly "gives rise to a cause of action for *either* the return of the property *or* damages.") (emphasis added). Pagador's failure to object prior to, or immediately after, the sale waived only his right to have the sale set aside, not a claim for damages.

**ISHEE, J., JOINS THIS OPINION.**