# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01365-COA

**MATHES ELECTRIC SUPPLY CO., INC.**                                    **APPELLANT**

**v.**

**CAN'T BE BEAT FENCE COMPANY, LLC AND**                      **APPELLEES**
**INTERNATIONAL FIDELITY INSURANCE**
**COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/09/2016 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BILLY C. CAMPBELL JR. |
| ATTORNEYS FOR APPELLEES: | MARK D. HERBERT |
| | MICHAEL MADISON TAYLOR JR. |
| | J. HENRY ROS |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 09/04/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND GREENLEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.    On March 10, 2009, Can't Be Beat Fence Company LLC (CBB) entered into a contract with the City of Bay St. Louis, Mississippi, for the construction of the Bay St. Louis Commagere Ballfield (Project). As required by Mississippi Code Annotated section 31-5-51 (Rev. 2008), CBB, as the principal, and International Fidelity Insurance Company (International Fidelity), as the surety, executed a labor-and-material payment bond. CBB entered into a subcontract with Greg Williams Electric Co. Inc. (Williams) for electrical work on the Project.

¶2. Mathes Electric Supply Co. Inc. (Mathes) provided Williams with materials for the Project. Although CBB paid Williams for its work, Williams never paid Mathes for the materials; so on April 1, 2010, Mathes submitted a payment-bond claim to CBB and International Fidelity. The insurance company denied the claim. On November 22, 2010, Mathes filed suit against Williams, CBB, and International Fidelity in Hancock County Circuit Court, alleging several causes of action, including bad faith on the part of International Fidelity for failing to remit its claim.[1] Mathes requested compensatory damages of $97,740.34, along with interest, costs of debt collection, and attorney's fees, as well as punitive damages for its bad-faith claim against International Fidelity.

¶3. On February 8, 2012, CBB and International Fidelity (the Appellees) filed a motion for summary judgment, asserting Mathes "failed to provide any evidence that it gave proper notice pursuant to [section] 31-5-51," which provides:

> Any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor *within ninety (90) days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made*, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be given in writing by the claimant to the

---

[1] CBB filed a third-party complaint against Larry Goff, a registered agent for Williams. However, Williams ceased operations in March 2011. Larry Goff, its agent and former secretary/treasurer, testified in a deposition that all records for the company had been destroyed. But he acknowledged that Williams had been paid by CBB for its payment applications, and he was unaware of any payments to Mathes.

contractor or surety at any place where the contractor or surety maintains an office or conducts business. Such notice may be personally delivered by the claimant to the contractor or surety, or it may be mailed by certified mail, return receipt requested, postage prepaid, to the contractor or surety. No such action may be maintained by any person not having a direct contractual relationship with the contractor-principal, unless the notice required by this section shall have been given.

(Emphasis added). The Appellees argued that because there was "no evidence that any of the materials invoiced by Mathes in the [ninety-day] notice period [(January 1-April 1, 2010)] were incorporated into the [P]roject," the bond claim was untimely filed. They also asserted that summary judgment was appropriate for the claim of bad faith as the lack of notice was "a justifiable reason to deny Mathes's payment[-]bond claim."

¶4.     Mathes responded, attaching two affidavits from two of Williams' employees, Sid Carroll and Charles Tow. Attesting that he was "competent to testify" and was making "th[e] affidavit from personal knowledge," Carroll, an estimator for Williams, averred that he had "performed work on the Commagere Ballfield Project," and material referenced in Mathes's Invoice 19640-00, dated January 12, 2010, "was incorporated into the Commagere Ballfield Project and/or was used and/or consumed in the course of the construction of the Commagere Ballfield Project." The invoice was attached to Carroll's affidavit. Tow, the Project supervisor for Williams, also testified that materials from Mathes had been incorporated in the Project, but the invoices referenced in his affidavit were all dated prior to January 1, 2010.

¶5.     On April 19, 2012, the Appellees filed a rebuttal and a motion to strike Carroll's

3

affidavit, contending the affidavit was "problematic and self-serving because he was not actually at the [P]roject at the time the materials would have been used in the [P]roject." To support its motion, the Appellees submitted "daily logs" dated January 5, 2010, to January 13, 2010, that Williams had provided to CBB. The only employees listed as working onsite at the Project were Tow, Vern Richardson, and Randy Breeden—Carroll was not listed. Mathes filed a motion to stay consideration of the Appellees' motion for summary judgment, as to the bad-faith claim, pending completion of discovery.

¶6. A hearing on the motion for summary judgment was held April 19, 2012, after which the circuit court asked the parties to submit proposed findings of undisputed facts and conclusions of law. Mathes continued to conduct discovery, deposing Tow and Goff. Tow testified unequivocally that materials listed in invoices dated after January 1, 2010, were used in the Project. Mathes filed Tow's March 31, 2014 deposition with the circuit court on January 6, 2016. The Appellees filed a motion to strike the additional documents filed by Mathes, particularly Tow's deposition.

¶7. On April 22, 2016, four years after the hearing, the circuit court granted the Appellees' motion for summary judgment, finding Mathes did not timely submit its payment-bond claim pursuant to section 31-5-51. The circuit court reasoned that "Carroll's affidavit may not be considered, because, [he] was not actually at the Commagere [P]roject at the time the materials would have been used in construction," citing the daily logs submitted by the Appellees. Therefore, the circuit court concluded that the evidence showed the last delivery

4

to the Project was November 18, 2009; so the "notice [was] improper, and no claim against the bond [could] proceed." With regard to the bad-faith claim, the court held: "Since the lack of evidence as to the incorporation of materials creates a reasonable doubt as to amounts owed under the bond, International [Fidelity] could not be liable for bad faith denial." The court did not address Tow's affidavit or subsequent deposition; it merely commented that the daily logs reflected Tow was present on the site "from January 5, 2010, to January 13, 2010."

¶8.    Mathes filed a motion to alter or amend the judgment, noting the court's failure to consider Tow's testimony. After a hearing on August 18, 2016, the circuit court denied the motion, finding there was "no intervening change in the law" or "any new evidence that was previously not available." The court entered a final judgment pursuant to Mississippi Rule of Civil Procedure 54(b), dismissing Mathes's claims with prejudice.

¶9.    On appeal, we find Carroll's affidavit and the daily logs provided a genuine issue of material fact as to his personal knowledge of whether materials supplied by Mathes were used on the Project within the ninety days prior to the filing of the payment-bond claim. We reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

## DISCUSSION

¶10.    Mathes claims that the circuit court erred in granting summary judgment because its April 1, 2010 payment-bond claim was timely provided within ninety (90) days from the date on which Mathes last supplied materials for the Project. A de novo standard of review is

5

employed when reviewing a circuit court's grant of summary judgment. *Blanchard v. Mize*, 186 So. 3d 403, 405 (¶11) (Miss. Ct. App. 2016). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). All evidence before the court must be examined "in the light most favorable to the nonmoving party." *Blanchard*, 186 So. 3d at 405 (¶11). "The party opposing the motion may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations and internal quotation marks omitted). "Any opposing affidavits must: (1) be sworn; (2) be made upon personal knowledge; and (3) show that the party providing the factual evidence is competent to testify." *Hans v. Mem'l Hosp. at Gulfport*, 40 So. 3d 1270, 1277 (¶16) (Miss. Ct. App. 2010).

¶11. Mathes contends that Carroll's affidavit testimony was "sufficient (by itself) to defeat [the Appellees'] motion for summary judgment as to the timeliness of [its] payment[-]bond claim." We agree. Carroll, a Williams employee, testified that he made his statements based on "personal knowledge," but the trial judge relied on Williams's internal daily work logs submitted by the Appellees in determining that Carroll was not present at the Project site during that time period. "To survive a motion for summary judgment, the party opposing the motion need only present a material issue of fact." *Doe v. Stegall*, 757 So. 2d 201, 206 (¶14)

6

(Miss. 2000). There was also deposition testimony by a Mathes employee attached to the Appellees' motion for summary judgment that indicated Carroll was familiar with the materials used at the Project site:

A. And the reason I shipped material to [Williams's] shop, because I was told that there wasn't a very secured area at the job. For, like, small stuff like this that can get lost, usually I'll ship that to their shop.

Q. Okay. Who told you that there wasn't a secure place at the job?

A. Sid Carroll.

Q. Who is Sid Carroll?

A. Sid Carroll was an estimator for Greg Williams Electric.

Q. Okay. Do you know if he was ever at the [P]roject?

A. I think he went to the [P]roject. I didn't go with him. I don't personally know that he did. I think that he did.

Viewing the evidence in the light most favorable to the nonmovant, Mathes, we find the discrepancy among Carroll's affidavit, the daily logs, and the Mathes employee's testimony, created a genuine issue of material fact as to whether Carroll had personal knowledge that material supplied by Mathes to Williams was incorporated into the Project after January 1, 2010.

¶12. Moreover, as Mathes argues, the daily work logs "were unauthenticated, and the record is void of any sworn testimony that such daily logs identify the only persons who were on the [P]roject site or who may have personal knowledge about the materials incorporated in the [P]roject." *See* M.R.E. 801 and 901. Rule 56(e) does provide that the court "may

7

permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits," but nowhere does Rule 56 state that affidavits may be opposed by documents submitted without supporting affidavits or other sworn testimony. Therefore, we find the Appellees failed to show they were entitled to a judgment as a matter of law.

¶13.    Additionally, Mathes claims that the circuit court should have considered Tow's 2014 deposition testimony, which stated that Mathes supplied materials to the Project "as late as January 20, 2010." The Appellees' response is that Tow's deposition was not submitted until 2016, more than three years after the summary-judgment hearing; so the court was correct not to consider that evidence in its ruling. Although this argument is rendered moot by our finding on the first issue, we acknowledge that Rule 56(c) requires an adverse party to serve opposing affidavits "prior to the day of the hearing." Furthermore, in *Lawrence v. Lawrence*, 956 So. 2d 251, 257 (¶15) (Miss. Ct. App. 2006), our Court held:

> It is certainly contrary to Rule 56(c) for the chancellor to consider documents that are not "on file" prior to the hearing on the motion. M.R.C.P. 6(b). *See also Richardson v. APAC-Miss. Inc.*, 631 So. 2d 143, 146 (Miss. 1994). We conclude that Rule 56(c) requires that *all matters upon which a party or the court may rely must be filed with the clerk and served on the other party prior to the hearing*.

(Emphasis added). However, this is a particularly unusual situation since the circuit court made no ruling on the summary-judgment motion until four years after the hearing, and the parties continued discovery during that period. Rule 56(c) requires that "[t]he judgment sought shall be rendered forthwith" if the summary-judgment materials show the moving party is entitled to such judgment. The term "forthwith" is defined as "[i]mmediately;

8

without delay." Black's Law Dictionary 725 (9th ed. 2009). Here, due to the extremely long delay between the hearing and the circuit court's ruling, additional discovery was conducted and submitted, which further showed the Appellees' lack of entitlement to summary judgment. Under these circumstances, we further find that the court erred in failing to take into consideration the deposition testimony of Tow, Williams's Project supervisor, filed months prior to its ruling.

¶14. Accordingly, we reverse the circuit court's grant of summary judgment and remand for further proceedings on Mathes's claims.

¶15. **REVERSED AND REMANDED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**